UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>REBECCA ANN WHITE<br><br>                              Defendant. | Case No.: 19-CR-00341-GPC<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 53.]** |

**I.     INTRODUCTION**

On April 15, 2021, Defendant Rebecca Ann White ("White") filed a *pro se* motion ("Motion") seeking compassionate release or reduction of her sentence under 18 U.S.C. 3582(c)(1)(A)(i). ECF No. 53. On June 10, 2021, the Court received a supplemental letter from White. ECF No. 61. On June 15, 2021, the Government filed a response in opposition ("Opp.") to White's Motion. ECF No. 63. On July 22, 2021, the Court accepted as filed White's reply ("Reply"). ECF Nos. 64, 65. For the reasons that follow, White's Motion is **DENIED**.

\ \ \

\ \ \

## II. BACKGROUND

White was convicted by guilty plea of one count of Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. 841(a)(1). This Court sentenced her to 70 months of imprisonment, followed by four years of supervised release. ECF No. 52. White has served approximately 31 months of that sentence. ECF No. 40 (Presentence Investigation Report or "PSR") at 1. She is currently incarcerated at FCI Dublin and is scheduled to be released on December 23, 2023. Motion at 1; Opp. at 2.

White is 47 years old. PSR at 2. At the time of the PSR, White was reported to "not have any physical issues" aside from pain and injuries resulting from previous vehicle accidents. PSR ¶¶ 81–87. White's Motion indicates that she tested positive for COVID-19 previously, but her supplemental letter states that the fellow inmate who assisted with drafting the Motion may have misunderstood her and she "meant to say that despite the well intended efforts of BOP, they have failed me and 280 fellow inmates, by their positive results and placing me at risk." Motion at 7; ECF No. 61. White states that she submitted a request for compassionate release to Warden Garcia of FCI Dublin on February 19, 2021, stating that, as a person suffering from a broken neck with fusions, degenerative disk disease, arthritis, anxiety, ADHD, PTSD, and scoliosis, she is considered a vulnerable individual according to the CDC Guidelines. Motion at 10. White has received both doses of the COVID-19 vaccine. Opp. at 20; Reply at 8. White also states that she has neurological problems that recently caused her to lose consciousness and split open her chin, and that she cannot get out of bed most days because of her back and neck pain. Motion at 12.

White has a 13-year-old child. *Id.* White's presentence report indicates that her child was adopted by White's parents, who reside in Oregon. PSR ¶ 70. White states

that her child has attempted suicide several times and that because her parents are sick and elderly, they cannot care for her child. Motion at 12–13.

White now moves this Court for compassionate release because she states she is at risk of becoming severely ill with COVID-19 due to the various underlying medical conditions she suffers from, because she is not receiving appropriate treatment for her longstanding medical issues, and because of her family circumstances, particularly the caretaking needs of her parents and child.

### III. DISCUSSION

White now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Accordingly, there are two questions before the Court: first,

whether White has satisfied the administrative exhaustion requirement, and second, whether White has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).  One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*.  As one district court explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.*, First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A. EXHAUSTION REQUIREMENT

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. Under this requirement, courts may consider a motion for compassionate

release so long as the defendant has either fully exhausted all administrative remedies or 30 days have lapsed from the receipt of such a request by the warden, whichever is earlier.

White states that on February 19, 2021, she submitted a request for compassionate release to Warden Garcia of FCI Dublin, a copy of which she attached to this Motion. Motion at 10.  The Government argues that White has not exhausted administrative remedies but does not address the request attached to White's motion.  Opp. at 6, 10. Because the Government does not explain why it believes White has failed to exhaust administrative remedies despite the evidence that she did draft such a request to the Warden, the Court finds that White has properly exhausted administrative remedies and proceeds to the merits of White's motion.

### B. EXTRAORDINARY AND COMPELLING CIRCUMSTANCES

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Prior to the First Step Act, the Sentencing Commission's applicable policy statement was found in Section 1B1.13 of the Sentencing Guidelines.  U.S.S.G. § 1B1.13.  Section 1B1.13 explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction;
> . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.  Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence

reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

However, the Sentencing Commission has not issued a new policy statement since the passage of the First Step Act, and Section 1B1.13 only refers to motions filed by the Bureau of Prisons Director. As a result, the Ninth Circuit has held that Section 1B1.13 is not an "applicable policy statement[]" for motions under 18 U.S.C. § 3582(c)(1)(A) filed by a defendant. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The Court therefore may consider Section 1B1.13 in its exercise of discretion, but it is not bound by its definition of extraordinary and compelling reasons. *Id.* at 801–02.

White argues that her risk of developing serious illness as a result of COVID-19, along with lasting injuries from a car accident, degenerative disk disease, arthritis, anxiety, ADHD, PTSD, and scoliosis qualify as "extraordinary and compelling" reasons justifying her release. Motion at 5, 10. In January 2017, White was in a vehicle collision, which resulted in a broken neck and neuropathy. PSR ¶ 82. White alleges she suffers other neurological problems since the car accident but has not been treated for these problems while in custody. Motion at 12.

While the CDC recognizes that individuals with certain neurological problems, such as dementia and Alzheimer's Disease, may be at an increased risk of severe illness from COVID-19, White has not established that the neurological conditions she suffers from as a result of past vehicle accidents increases her risk of becoming severely ill with the virus. *See People Who Are at Higher Risk for Severe Illness: People with Certain*

*Medical Conditions*, Centers for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (May 13, 2021).  Additionally, White's other medical issues are not on the CDC's list of conditions that increase a person's risk of becoming severely ill with COVID-19.  Also, as the Government notes, the Court sentenced White during the pandemic and considered her existing health concerns, including her spinal injury.  ECF No. 51; PSR ¶¶ 81–87.

White's risk of becoming severely ill with COVID-19 is also significantly reduced now that she has been vaccinated.  Opp. at 20; Reply at 8.  This court has recognized that a vaccination significantly mitigates the risk of contracting COVID-19. *See, e.g., United States v. Grummer*, No. 08-CR-4402-DMS, --- F.Supp.3d ----, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021); *United States v. Rocha*, No. 18-CR-04180-BAS-1, 2021 WL 134150, at *3 (S.D. Cal. Jan. 14, 2021) (stating an "extraordinary and compelling" circumstance does not exist given that defendant "is likely to get a vaccine soon").  A recent study showed that Pfizer-BioNtech and Moderna vaccines reduced the risk of severe illness of Covid-19 by 94% for those who were vaccinated.  *Largest CDC Covid-19 Vaccine Effectiveness Study in Health Workers Shows mRNA Vaccines 94% Effective*, CDC, https://www.cdc.gov/media/releases/2021/p0514-covid-19-vaccine-effectiveness.html (May 14, 2021).  The evidence indicates that these vaccines continue to provide strong protection against newly circulating variants.  *About Variants of the Virus that Causes COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html (June 28, 2021) ("So far, studies suggest that the current authorized vaccines work on the circulating variants.").  The fact that there may be coronavirus variants that develop in the future that would render the vaccines less effective at staving off severe disease does not justify the release of a fully vaccinated individual without particular health concerns under current circumstances.

Further, White has not shown that, absent any connection to adverse COVID-19 outcomes, her alleged health issues rise to the level of extraordinary and compelling reasons for release. White argues that she has not been treated for her ongoing neurological issues as a result of a vehicle accident in 2018. Motion at 12; Reply at 3–4. However, the Motion suggests that these are longstanding health issues, and White has not explained what particular treatment she is unable to receive while incarcerated. White attaches medical records, but these suggest that that she has recently been seen by a medical provider at FCI Dublin and prescribed medication for nerve pain. Although White notes that she has experienced "blackouts" that caused injuries, she does not provide enough information to compel the conclusion that release is the only means of adequately treating her condition. The Court is not in a position to second guess the treatment plan of her medical providers in the context of a motion for compassionate release. Should White believe the Bureau of Prisons is violating her right to adequate medical care, she is able to pursue a civil suit after exhausting appropriate administrative remedies. *Cf. United States v. Miller*, No. 15-CR-00471-CRB-1, 2021 WL 2711728, at *4 (N.D. Cal. July 1, 2021) (citing *Brown v. Plata*, 563 U.S. 493, 511 (2011)) (noting that the typical remedy for inadequate medical care is an order preventing such constitutional violations from continuing, rather than release). Accordingly, the Court finds that White has not demonstrated extraordinary and compelling reasons for release based on her medical conditions.

White also argues that the caretaking needs of her family, specifically her mother, father, and child, constitute "extraordinary and compelling reasons" in favor of her Motion. Though the Government does not address this argument, this Court will consider whether White's family circumstances amount to "extraordinary or compelling reasons" for her release.

The Sentencing Guidelines provide a basis for familial circumstances that may provide grounds for a reduction in sentence. U.S.S.G. § 1B1.13 Application Note 1(C) (stating family circumstances include "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," and "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only caregiver for the spouse or registered partner"). However, under *Aruda*, the Court is not bound to consider only those circumstances included in the language of the Guidelines. *Aruda*, 993 F.3d at 802; *see also United States v. Yoda*, 15-CR-95 (AJN), 2020 WL 5502325, at *3 (S.D.N.Y. Sept. 11, 2020) ("[a]s other courts have noted in reference to [the family circumstances] category, 'a court may find that there exists an extraordinary and compelling reason other than those specifically enumerated in the Application notes to § 1B1.13.'") (quoting *United States v. Lisi*, 440 F. Supp. 3d 246, 251–52 (S.D.N.Y. 2020)).

The Court agrees that White's child's struggles with mental health are certainly cause for concern and does not dismiss the impact of having a parent incarcerated. However, it is not clear that White's release is needed for any particular caregiving responsibilities. For one, White's PSR indicated that White's parents legally adopted her child and that, at the time, her child's life was "very positive and stable" with her parents. PSR ¶ 70. White's filing indicates that her child "lives with [her] elderly sick parents who [are] not able to care for her [child] and her [child's] emotional conditions" but does not provide information about how circumstances have changed that prevent her parents from adequately caring for her child when they were able to previously. Motion at 12–13. Although the Court does not discount the challenges White's incarceration poses to her family, the information presented to does not indicate that her child is without appropriate care such that her release is the only available means of ensuring her family's wellbeing.

Accordingly, the Court finds that Defendant has not presented the sort of extraordinary and compelling reasons that enable the Court to grant her compassionate release under Section 3582.

### IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion for compassionate release pursuant to 18 U.S.C. § 3582(c) is **DENIED**.

**IT IS SO ORDERED.**

Dated:  August 6, 2021

Hon. Gonzalo P. Curiel
United States District Judge